**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 20-cv-01172-RM-MEH

BRYCE WATKINS,

    Plaintiff,

v.

DOUGLAS COUNTY, COLORADO,
BRIAN WUNDERLICH, in his individual capacity,
KEVIN NICHOLS, in his individual capacity, and
TAMMY BLACK, in her individual capacity,

    Defendants.

---

## ORDER

---

This case brought under 42 U.S.C. § 1983 is before the Court on the Recommendation of United States Magistrate Judge Michael E. Hegarty (ECF No. 35) to grant in part and deny in part Defendants' Motion to Dismiss Complaint (ECF No. 23). Plaintiff has filed objections to the Recommendation (ECF No. 38), and Defendants have responded to those objections (ECF No. 41). For the reasons below, the Court overrules Plaintiff's objections and accepts the Recommendation in its entirety.

**I.  LEGAL STANDARDS**

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. An objection is proper only if it is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir.

1996). "In the absence of a timely objection, the district may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). The complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

## II.     BACKGROUND

Plaintiff's claims stem from his arrest inside his own home the day after his wife filed a domestic violence report with the Douglas County Sheriff's Office. No party objected to the magistrate judge's recitation of the relevant background information, which the Court incorporates herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). For present purposes, the Court provides the following summary. After Plaintiff's wife called the sheriff's office to report that Plaintiff had returned home, Defendants Nichols, Black, and Wunderlich were dispatched to the home. Defendant Nichols spoke with Plaintiff's wife in a nearby park, and she provided the four-digit code to open the garage and front door. During their conversation, Plaintiff's wife received a call from Plaintiff on her cell phone. Defendant

Nichols answered the call and asked Plaintiff to come out to speak with the officers. Plaintiff refused, stating that he was going to take a shower and then ending the call. Over the police radio, Defendant reported this interaction to the other officers. According to Plaintiff, he told Defendant Nichols that the officers could not enter his home without a warrant. However, there is no allegation that Defendant Nichols conveyed such a statement to the other officers.

Next, while Plaintiff's wife remained at the park, the officers opened the garage door and entered the garage. Following an apparent inquiry from Defendant Wunderlich, the ranking officer, Defendant Nichols returned to the park to obtain Plaintiff's wife's express consent to enter the home, which she readily provided. Defendant Nichols returned to the home and relayed her express consent. The officers then entered the home through the garage with tasers drawn, announcing themselves loudly. Plaintiff emerged at the stairs wearing only a towel, asking what was going on, and yelling, "This is my house!" Moments later, the officers tackled and arrested Plaintiff.

In his second amended complaint, Plaintiff asserts an unlawful entry and search claim against the individual Defendants, an excessive force claim against the individual Defendants, a municipal liability claim against Defendant Douglas County, and a supervisory liability claim against Defendant Wunderlich. Adopting the magistrate judge's Recommendation will leave only an unlawful entry claim against Defendants Nichols and Black and an excessive force claim against the individual Defendants.

### III. ANALYSIS

#### A. Defendants' Exhibits

As a threshold matter, Plaintiff objects to the Court's consideration of four exhibits attached to Defendants' motion: (1) the video from Defendant Nichols' body camera, (2) a plea deal pertaining to the state court proceedings against Plaintiff, (3) a transcript of a suppression hearing that was part of those proceedings, and (4) a declaration purporting to authenticate the body camera video. A court may consider matters outside the pleadings without converting a motion to dismiss into a motion for summary judgment only if they are referred to in the complaint, central to a claim, and indisputably authentic. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Here, the magistrate judge considered only a portion of the body camera video showing a short conversation between Defendants Nichols and Black on Plaintiff's front porch, during most of which their bodycams were muted. When the audio resumed, Defendant Nichols made a statement indicating that he had not obtained Plaintiff's wife's express consent to enter the home. The Court agrees with the magistrate judge's determination that the complaint specifically refers to the officers' muting of their bodycams during the conversation. (ECF No. 1 at ¶¶ 44, 45, 46.) Moreover, the conversation is undeniably central to Plaintiff's assertion that these officers knew they did not have consent to enter his home, and there is no dispute as to the authenticity of this portion of the video. Accordingly, the Court finds that this portion of the video as well as the related declaration are properly considered at this stage.

The magistrate judge found that he could take judicial notice of the plea deal, even though it is not referenced in the complaint. Plaintiff makes no specific objection as to any

4

portion of the Recommendation that directly relies on or relates to the plea deal, and the Court finds there is no need to consider it in resolving the motion to dismiss.

And the Court agrees with the magistrate judge's determination that the complaint specifically refers to the state court suppression hearing, where the state court judge concluded that officers lacked valid consent to enter Plaintiff's garage and home.  (*Id.* at ¶¶ 120, 121, 122, 123.)  However, even though the magistrate judge concluded that the transcript of that proceeding could be considered, the Court finds it is unnecessary to do so at this stage, as no statements from the suppression hearing have any bearing on Defendants' motion to dismiss the federal claims Plaintiff brings in this case.

**B.     Qualified Immunity**

Plaintiff argues that the magistrate judge erred by concluding that Defendant Black is entitled to qualified immunity on the unlawful entry claim with respect to her entry into the house (but not with respect to her entry into the garage) and that Defendant Wunderlich is entitled to qualified immunity on this claim completely.  To overcome a qualified immunity defense, the plaintiff must show that (1) the defendant's conduct violated a constitutional right, and (2) it was clearly established at the time of the violation that such conduct constituted a violation of that right.  *See Perea v. Baca*, 817 F.3d 1198, 1202 (10th Cir. 2016).  For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right.  *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016).  Although the Fourth Amendment generally prohibits warrantless entry of a person's home, no constitutional violation occurs when officers

enter a home with a reasonable belief that a person with authority over the premises has voluntarily consented.  *See Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990).

Here, the magistrate judge determined Plaintiff failed to allege facts showing Defendant Wunderlich did not have a reasonable belief that the officers had valid consent to enter the garage and the house, and therefore he is entitled to qualified immunity on the unlawful entry claim.  The magistrate judge also determined that, due to the conversation on the front porch between Defendant Nichols and Defendant Black, a genuine dispute exists as to whether Defendant Black reasonably believed the officers had valid consent to enter the garage.  But the magistrate judge found, nonetheless, that Plaintiff did not allege facts showing that she did not have  a reasonable belief that they had valid consent to enter the house, after Defendant Nichols returned from speaking with Plaintiff's wife a second time and conveyed to them that she had given her express consent.  Accordingly, the magistrate judge determined that none of Defendant Wunderlich's conduct violated Plaintiff's constitutional right to be free from unreasonable searches and seizures and that none of Defendant Black's conduct, upon entering the house, violated that right.

Plaintiff argues that the magistrate judge erred by concluding Defendants Wunderlich and Black are entitled to qualified immunity, citing *Georgia v. Randolph*, 547 U.S. 103 (2006), to establish a violation of his constitutional rights.  *Randolph* holds "that warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident."  *Id.* at 120.  The *Randolph* case involved a "disputed invitation" by a separated husband and wife who stood at the door of the residence and accused each other of abusing drugs

6

and alcohol. *Id.* at 107. When police asked the husband for permission to search the house, he "unequivocally refused," so they asked the wife, who "readily gave" her consent. *Id.*

Plaintiff's reliance on *Randolph* in this context, however, is misplaced. The Supreme Court has stated that *Randolph* "applies only when the objector is standing in the door saying 'stay out' when officers propose to make a consent search." *Fernandez v. California*, 571 U.S. 292, 306 (2014). That is not what occurred here. With respect to the officers' entry into his home, Plaintiff was not "physically present" when his wife's express consent was given or when the entry occurred. *Cf. Randolph*, 547 U.S. at 108. It is well established that "the consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock*, 415 U.S. 164, 170 (1974). Plaintiff cites no authority construing the physical presence requirement from *Randolph* so broadly as to include mere presence somewhere inside the premises to be entered. Such an interpretation is clearly at odds with the statement from *Fernandez* quoted above. Moreover, such a rule would undermine the rationale behind *Randolph*, where the Court, for pragmatic reasons, declined "to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received." 547 U.S. at 122.

Further, there are no factual allegations supporting Plaintiff's contention that Defendants Wunderlich and Black knew Plaintiff had "unequivocally refused" to consent when they entered the house. From these Defendants' perspective, Plaintiff had merely refused (over the phone) to come out to meet them, stated that he was going to take a shower, and abruptly ended the call with Defendant Nichols. Plaintiff was not at the door telling the officers to stay out. Plaintiff

7

cites no authority for the proposition that the officers were required to infer that "[h]e obviously wanted the individual Defendants to leave him alone in his home." (ECF No. 38 at 10.) In *Illinois v. Rodriguez*, 497 U.S. 177, 179-80 (1990), police obtained valid consent to enter the defendant's apartment and arrest him when a person who had lived there with him for several months went with them to the apartment and used a key to unlock the door for them, telling them he was asleep inside. Assuming the defendant in that case would have preferred to continue sleeping rather than be arrested, Plaintiff's rationale would have precluded the officers from entering the apartment in that case.

Plaintiff's attempt to distinguish *Rodriguez* by arguing that the defendant in that case never communicated his lack of consent for the police to enter his home before they entered it is unavailing because, again, the allegations do not establish that Plaintiff communicated his lack of consent to anyone besides Defendant Nichols, and he was clearly not standing at the door telling the officers to stay out. Plaintiff cites no authority for the proposition that the mere desire to be left alone is sufficient to revoke valid consent to entry, which these officers obtained from Plaintiff's wife.

Plaintiff also argues that the officers should have left immediately once he met them at the stairs inside his home. (*Id.* at 11.) But at that point the entry had already occurred. Moreover, as the magistrate judge noted, the revocation cases Plaintiff relies on involve consent given and revoked by the same person. (*See* ECF No. 35 at 20.) Here, there is no dispute the officers had probable cause to arrest Plaintiff and his wife's express consent to enter the home. Plaintiff cites no authority for the proposition that the officers were required to leave as soon as he told them to, and such rule would make little sense under the circumstances of a case like this

8

one. Thus, Plaintiff has not shown that Defendants Black and Wunderlich violated his rights by remaining in his home after he expressed his disapproval of their presence.

Plaintiff also asserts that the entries into his home after he was arrested violated his rights. But "an occupant who is absent due to a lawful detention or arrest stands in the same shoes as an occupant who is absent for any other reason." *Fernandez*, 571 U.S. at 303. As a result, once he was arrested, Plaintiff was no longer "present" for purposes of registering objections to the entry of his home. Accordingly, Plaintiff's arguments regarding the "multiple and distinct home entries" after his arrest lack merit. (ECF No. 38 at 10.)

Defendant Wunderlich's entry into the garage requires one bit of further analysis. To the extent Defendants Nichols and Black may not have had a reasonable belief that Plaintiff's wife's implied consent to enter the home was sufficient, there is no evidence that Defendant Wunderlich was in a similar position. Rather, as discussed above, he had only the information Defendant Nichols had reported over the police radio, and that information did not amount to an unequivocal refusal to consent to entry. Thus, even assuming Plaintiff's was "physically present" under *Randolph* during his phone conversation with Defendant Nichols that was contemporaneous with his wife providing implied consent, he still has not pleaded allegations showing that Defendant Wunderlich acted unreasonably by entering the garage.

In addition to failing allege conduct by Defendant Wunderlich that violated Plaintiff's rights, Plaintiff has alleged no basis for Defendant Wunderlich to believe that Plaintiff's rights were being violated. Thus, to the extent Plaintiff continues to assert a claim against Defendant Wunderlich for failure to intervene (*see* ECF No. 38 at 10 n.8), he is entitled to qualified immunity on that basis as well. Therefore, the Court finds Defendant Wunderlich is entitled to

9

qualified immunity with respect to Plaintiff's unlawful entry claim in its entirety. And, although Plaintiff has stated an unlawful entry claim against Defendant Black with respect to her entry into the garage, she is entitled to qualified immunity with respect to Plaintiff's claim against her based on her entry into the home.

### C. Municipal Liability

Plaintiff contends that the magistrate judge erred by concluding that Defendant Douglas County is not a proper defendant in this case and that he failed to state a municipal liability claim. The Court finds that each basis for dismissing this claim is valid.

First, Colo. Rev. Stat. § 30-11-105 expressly provides that a suit against a county "shall" be brought against the board of county commissioners for that county, and courts have concluded that this provision "provides the exclusive method by which jurisdiction can be obtained." *Calahan v. Jefferson Cnty.*, 429 P.2d 301, 302 (Colo. 1967) (en banc); *see also Gonzales v. Martinez*, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005) ("[W]hether because of the plain language of the statute or the Plaintiff's failure to state a valid claim, the action cannot lie against Huerfano County."). Plaintiff provides no compelling reason why this statute should not be controlling.

Second, Plaintiff's allegations against Defendant Douglas County are conclusory in any event. To establish municipal liability, a plaintiff must demonstrate a "municipal policy or custom," which may take the form of (1) a formal regulation or policy statement, (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, (3) the decisions of employees with final policymaking authority, (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates

to whom authority was delegated subject to these policymakers' review and approval, or (5) the failure to adequately train or supervise employees, so long as that failure results from "deliberate indifference" to the injuries that may be caused. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation omitted).  After establishing a municipal policy or custom, a plaintiff must demonstrate a direct causal link between the policy or custom and the injury alleged. *Id.* "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997).  Finally, the plaintiff must establish that the municipal action was taken with deliberate indifference to his rights. *Id.* at 407.  "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quotation omitted).

Assuming for present purposes Defendant Black unlawfully entered and searched Plaintiff's garage and that Defendant Nichols unlawfully entered and searched Plaintiff's garage and house, Plaintiff has not shown that Defendant Douglas County had a custom or policy of failing to train, supervise, or discipline its police officers.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Plaintiff has failed to identify a specific inadequacy in training or supervision, much less a direct causal link between such training or supervision and the conduct of these officers.  "[P]roving that a municipality itself actually caused a

11

constitutional violation by failing to train the offending employee presents difficult problems of proof, and we must adhere to a stringent standard of fault, lest municipal liability under § 1983 collapse into *respondeat superior*." *Id.* at 70 (quotation omitted). Plaintiff offers only conclusory allegations as to how Defendant Douglas County's training and supervision were related to his injury and falls well short of establishing that this Defendant was the "moving force" behind the constitutional violations he alleges. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Indeed, it is far from a legal certainty that anything Plaintiff might have said to Defendant Nichols over the phone could have effected a revocation of his wife's consent (implied or express) for the officers to enter the home. Thus, there is no factual basis to support a finding that Defendant Douglas County acted in a way that was likely to result in a violation of Plaintiff's constitutional rights.

        **D.**     **Supervisory Liability**

Plaintiff contends that the magistrate judge erred by concluding he failed to state a plausible claim for supervisory liability against Defendant Wunderlich. To state a claim for supervisory liability, a plaintiff must show an "affirmative link" between the supervisor and the constitutional violation, which includes (1) personal involvement, (2) a sufficient causal connection, and (3) a culpable state of mind. *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015). The Court has already rejected Plaintiff's contention that Defendant Wunderlich's personal conduct can support an unlawful entry claim. Although portions of Plaintiff's unlawful entry claim survive Defendants' motion to dismiss, the Court discerns no allegations that would establish a culpable state of mind on the part of Defendant Wunderlich. From his perspective, when the officers entered Plaintiff's garage, they were acting with the implied consent of his

wife, who had summoned them to the home and provided the code to enter it. Before the officers proceeded from the garage into the house, Defendant Nichols had returned from a second conversation with Plaintiff's wife, during which she expressly consented to the officer's entry. Under these circumstances, Plaintiff has failed to state a supervisory liability claim against Defendant Wunderlich.

### IV.   CONCLUSION

Accordingly, the Court

(1)   OVERRULES Plaintiffs objections (ECF No. 38);

(2)   ACCEPTS and ADOPTS the Recommendation (ECF No. 35); and

(3)   GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss (ECF No. 23), as stated above.

DATED this 12th day of January, 2021.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge