IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 20-cv-01172-RM-MEH

BRYCE WATKINS,

 Plaintiff,

v.

BRIAN WUNDERLICH, in his individual capacity,
KEVIN NICHOLS, in his individual capacity, and
TAMMY BLACK n/k/a Tammy Bozarth, in her individual capacity,

 Defendants.

---

## ORDER

---

 This lawsuit brought under 42 U.S.C. § 1983 is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 20.) The Motion has been fully briefed. (ECF Nos. 23, 28.) For the reasons below, the Motion is granted.

**I. BACKGROUND**

 The following facts are not disputed for purposes of the Motion. On the evening of April 28, 2018, Plaintiff's wife called 911 and reported an incident of domestic violence that had occurred that morning at the home she jointly owned with Plaintiff. (ECF No. 87, ¶¶ 1, 2.) Plaintiff's wife reported that Plaintiff had tried to strangle her, and that she believed he might try to kill her. (*Id.* at ¶¶ 6, 7.) The next morning, she called 911 again to report that Plaintiff had returned home for the first time since the incident. (*Id.* at ¶ 10.) Defendants Nichols and Black, Douglas County Sheriff's Office deputies, and Defendant Wunderlich, a sergeant, responded to the call. (*Id.* at ¶¶ 11, 21.)

Defendant Nichols met with Plaintiff's wife at a park around the corner from the home, where she reported that she did not feel safe with Plaintiff. (*Id.* at ¶¶ 11, 12.) While there, Plaintiff's wife received a call from Plaintiff on her cell phone, and she handed the phone to Defendant Nichols, who spoke with Plaintiff for about thirty seconds. (*Id.* at ¶ 14.) Defendant Nichols asked Plaintiff to come to the front door and speak with him, but Plaintiff refused and told Defendant Nichols that the police could not enter his home. (*Id.* at ¶¶ 15, 16; ECF No. 86 at 1.) Defendant Nichols reported over the radio to the other officers that Plaintiff was refusing to come to the door. (ECF No. 87, ¶ 17.) Before heading over to the home, Defendant Nichols asked Plaintiff's wife for the code to open the home's garage. (*Id.* at ¶ 18.) She provided the code, explained how to enter it, and added that it could also be used for the front door. (*Id.* at ¶ 19.)

At the home, Defendant Nichols used the code to open the garage door, and he and Defendant Black entered the garage. (*Id.* at ¶ 22.) Defendant Wunderlich then asked Defendant Nichols if Plaintiff's wife had explicitly given them permission to enter the home, and Defendant Nichols acknowledged that she had not. (*Id.* at ¶ 23.) Defendant Nichols then returned to the park, where he received explicit permission from Plaintiff's wife for the officers to go into the home. (*Id.* at ¶ 25.) Defendant Nichols relayed the information to the other officers, and moments later they entered the living area of the home, announcing they were from the sheriff's office. (*Id.* at ¶¶ 26, 29.) From a different location in the home, Plaintiff responded by stating, "Excuse me. I'm actually getting dressed right now." (*Id.* at ¶ 31.) Defendants encountered Plaintiff when he was on the stairs above them, shirtless and with a towel wrapped around his waist. (*Id.* at ¶¶ 34, 35.) Defendant Nichols repeatedly commanded Plaintiff to come down the stairs, but he remained on the landing, asking what was going on and stating, "You're in my

2

house." (*Id.* at ¶¶ 36, 37.) Defendant Nichols responded, "Your wife gave us permission." (*Id.* at ¶ 37.)

Plaintiff then began to walk down the stairs, stating, "I did not do anything." (*Id.* at ¶ 39.) As Defendant Nichols reached for one of Plaintiff's arms, he stepped back from the officers while still facing them and retreated up the stairs. (*Id.* at ¶¶ 40, 41.) A struggle ensued, but the officers apprehended Plaintiff on the stairs and placed him in handcuffs in about thirty seconds. (*Id.* at ¶¶ 42-47.) Defendant Nichols advised Plaintiff he was being arrested for "second degree assault, domestic violence." (*Id.* at 47.) Defendant Wunderlich asked Plaintiff where his clothes were and for permission to bring him some clothing, which Plaintiff agreed to. (*Id.* at ¶ 49.) After Defendant Nichols helped Plaintiff into his pants, Plaintiff was escorted out the front door and into a patrol car. (*Id.* at ¶¶ 50, 51.)

While in the car, Plaintiff was examined by medical personnel. (*Id.* at ¶ 52.) He remained in handcuffs as he was transported to the jail and underwent the booking process. (*Id.* at ¶ 53.) Plaintiff later testified that he experienced some bruising around his wrists from the handcuffs. (*Id.* at ¶ 54.) He was charged with a felony for the domestic assault on his wife. (*Id.* at ¶ 55.)

In their Motion, Defendants contend they are entitled to qualified immunity on Plaintiff's remaining claims: an unlawful entry or search claim against Defendants Nichols and Black and an excessive force claim against all Defendants.

II.     **LEGAL STANDARDS**

    A.     **Summary Judgment**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Gutteridge v.*

*Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). Applying this standard requires viewing the facts in the light most favorable to the nonmoving party and resolving all factual disputes and reasonable inferences in his favor. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013). However, "if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### B.   Qualified Immunity

Qualified immunity shields individual defendants named in § 1983 actions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Gutteridge*, 878 F.3d at 1238; *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014). "Once the qualified immunity defense is asserted, the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quotation omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the burden of the movant for summary judgment—showing that there are no genuine issues

4

of material fact that he or she is entitled to judgment as a matter of law." *Gutteridge*, 878 F.3d at 1238 (quotation omitted).

### III.     ANALYSIS

Defendants assert that their entry into the home and arrest of Plaintiff did not violate his clearly established Fourth Amendment rights because his wife consented to the entry and the force used to effect the arrest was not clearly unreasonable. The Court agrees with both assertions.

### A.     Unlawful Entry or Search Claim

"Voluntary consent is a longstanding exception to the general requirement that law enforcement officers must have a warrant to enter a person's home." *United States v. Guillen*, 995 F.3d 1095, 1103 (10th Cir. 2021). "The exception applies when the government proves (1) the officers received either express or implied consent and (2) that consent was freely and voluntarily given." *Id.*

Plaintiff first argues that a jury question exists as to whether Defendants Nichols and Black had legal justification for their initial entry into Plaintiff's garage. But based on the undisputed facts, these Defendants could have reasonably believed Plaintiff's wife impliedly consented to the entry by providing the code to open the home's front door and garage. Although consent must be clear, it need not be verbal. *See United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007). Consent may be granted through gestures or other indications of acquiescence, so long as they are sufficiently comprehensible to a reasonable officer. *Id.* at 789-90. The fact that Defendants subsequently obtained—seemingly out of an abundance of caution—Plaintiff's wife's express consent to enter the home does not render ambiguous or invalid the implied consent she gave earlier by providing Defendant with the code and explaining

5

how to use it.  Plaintiff has adduced no evidence that this implied consent was not "unequivocal and specific" (ECF No. 72 at 6), and the Court finds it was sufficient to provide reasonable officers with a basis for believing they had a lawful basis to enter the home.

The Court also rejects Plaintiff's contention that either the implied or express consent given by his wife was invalidated by any statement he made either to Defendant Nichols over the phone or to Defendants directly once they were inside the home.  Plaintiff's reliance on *Georgia v. Randolph*, 547 U.S. 1515, 1526 (2006), in this context is misplaced.  There, the officer asked the defendant's wife for permission to search the house after she told him there were items of drug evidence in the home, and the defendant had unequivocally refused the officer's request for *his* permission to conduct a search.  *Id.* at 1519.  The *Randolph* Court held that "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of the consent given to the police by another resident."  *Id.* at 1526.  But *Randolph* is distinguishable from this case for multiple reasons—one if which is because the officers were not conducting a search but effecting an arrest.  "[W]hen the police may enter without committing a trespass, and the police may enter to search for evidence" are "two different issues."  *Id.* at 1525.

More importantly, however, the *Randolph* Court repeatedly emphasized that the person objecting to the search was standing at the door.  *See id.* at 1522-23 ("[I]t is fair to say that a caller standing at the door of shared premises would have no confidence that one occupant's invitation was a sufficiently good reason to enter when a fellow tenant stood there saying, 'stay out.'"); *id.* at 1526 ("The undoubted right of the police to enter in order to protect a victim, however, has nothing to do with the question in this case, whether a search with the consent of one co-tenant is good against another, standing at the door and expressly refusing consent."); *id.*

at 1527 ("[W]e have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search."). As noted in *Fernandez v. California*, 571 U.S. 292, 303-04 (2014), expanding *Randolph* by allowing a previously made objection to remain effective even when the objector is not standing at the door would create numerous "practical complications that *Randolph* sought to avoid." *See id.* at 306 ("If *Randolph* is taken at its word—that it applies only when the objector is standing in the door saying 'stay out' when officers propose to make a consent search—all of these problems disappear.").

      Here, it is undisputed that Plaintiff was not standing at any door Defendants opened in the course of arresting him. Based on the rationales behind *Randolph* and *Fernandez*, the Court declines Plaintiff's invitation to apply Randolph "to all circumstances when the expressly objecting occupant is physically present in their home." (ECF No. 72 at 13.) The Court also finds that no statements or conduct tending to show that Plaintiff did not want the officers in his home—made either beforehand or during his arrest—overrode or revoked the consent given by his wife. *Cf. Manzanares v. Higdon*, 575 F.3d 1135, 1146 (10th Cir. 2009) (concluding officer was compelled to leave after consent was withdrawn by the person who initially granted it); *see also Williams v. People*, 455 P.3d 347, 348 (Colo. 2019) (concluding that husband's subsequent objection to search, after the officers had already entered his home and were in the process of taking possession of drugs and paraphernalia, could not vitiate his wife's previously given consent). Because Defendants had valid consent to enter the home, there is no genuine issue as to whether the entry by Defendants Nichols and Black violated his Fourth Amendment rights, and they are entitled to qualified immunity on this claim. At the very least, the

application of *Randolph* to the facts of this case is not clearly established. This provides a further basis for concluding that qualified immunity applies.

### B. Excessive Force Claim

"[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Determining whether the force used to effectuate a seizure is reasonable under the Fourth Amendment "requires careful consideration of the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The "reasonableness" of a particular use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. *Id.*

Here, Plaintiff admits he "retreated a handful of steps" despite repeated commands to come down the stairs. (ECF No. 72 at 16.) Moreover, he was being arrested for a violent felony based on the allegation he had attempted to strangle his wife the day before. Nonetheless, he attempts to salvage his excessive force claim by contending that, in the relatively brief time it took for the officers to arrest him, they "all beat him"; "Defendant Nichols grabbed and tackled him, throwing [him] down hard to the ground with his back pointed towards the stairs"; Defendant Nichols "intentionally choked him"; the officers "threw [him] down to the ground very hard (again), this time face-first"; and Defendant Wunderlich "crushed [his] body while he was lying face-down on his stairs." (ECF No. 72 at 17.) He further contends he was "excessively tightly handcuffed" for over two hours. (*Id.*) Tellingly, however, Plaintiff does

point to any evidence of an actual injury that is not de minimis resulting from Defendants' conduct. "[A] claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). In his Response, Plaintiff contends that his "actual injury here included but is not limited to unnecessary and severe pain, bruising, and lingering damage to at least his finger." (ECF No. 72 at 20 n.9.) The Court finds Plaintiff's allegations and evidence are insufficient to establish that Defendants exceeded what was reasonable to effectuate his arrest. In the absence of a constitutional violation, Defendants are entitled to qualified immunity on this claim as well.

## IV.     CONCLUSION

Therefore, the Motion (ECF No. 66) is GRANTED, and the Clerk is directed to CLOSE this case.

DATED this 22nd day of September, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

9